OPINION
 STATEMENT OF THE FACTS AND CASE
Appellant Denise Ryder and Appellee Dudley Ryder were divorced on December 4, 1996.
Appellant was given custody of the couple's minor child, Joshua Ryder, d.o.b. November 25, 1994.
By Judgment Entry dated March 21, 1997, Appellee was given companionship.
Upon Appellee's move to West Virginia, said Entry was modified to weekend companionship in West Virginia on the third weekend of each month, and three non-consecutive weeks of summer vacation. Appellee and Appellant would meet in Marietta and exchange Joshua.
In June, 2000, Appellant drove to Florida and back with Joshua. On July 2, 2000, Joshua had a kidney stone attack.
On September 18, 2000, Appellee filed a Motion for contempt alleging that Appellant violated the terms of the Court Order of March 21, 1997, by denying companionship for the week of August 11-18, 2000, and June 18, 2000.
A show cause hearing was initially set on said motion for October 5, 2000, with same being continued and set for an evidentiary hearing on November 1, 2000.
On October 30, 2000, Joshua had a second kidney stone attack and was taken to the emergency room.
On October 31, 2000, Joshua was examined by Dr. Beshara George Tabet, a urologist
On November 1, 2000, the parties reached a new agreement which was read into the record on said date and was then reduced to writing and docketed on December 7, 2000, which modified the companionship schedule as follows:
 The parties shall cooperate with each other and communicate with each other in regards to their minor child, Joshua.
* * *
 The parties shall attempt to resolve their differences without unnecessary court involvement, and each shall make an effort to be flexible when able for the sake, benefit and best interests of the minor child, Joshua.
At a follow-up visit on November 14, 2000, Dr. Tabet wrote a note stating:
 "Joshua Ryder had a urethra calculus. He's not allowed to travel for long distances since it may trigger his pain."
Appellant refused to let Joshua travel to West Virginia in either November or December, 2000. Appellant did advise Appellee in advance that she was refusing to allow his November companionship due to Joshua's trouble with kidney stones. Appellee testified that he was never notified that Appellant was not going to allow Joshua to come to West Virginia for the December visit and he went to the K-Mart in Marietta and waited for them to arrive at the scheduled time. (2/8/2001 T. at 4-6).
Dr. Tabet referred Joshua to Dr. Nasrallah, who in turn referred him to Dr. Prebis, a pediatric nephrologist.
On January 8, 2001, Dr. Prebis examined Joshua and determined the cause of his kidney stones to be a metabolic problem resulting in a high urine calcium excretion. Dr. Prebis recommended a change of diet and prescribed diuretics. Dr. Prebis also removed Joshua's travel restriction.
At that time, Appellant allowed Joshua to resume his visits to West Virginia,.
On January 11, 2001, Appellee filed a Motion for Contempt, alleging that Appellant failed to abide by the Court's order of March 21, 1997, and December 7, 2000, regarding companionship.
The contempt matter came on for hearing February 8, 2001, and April 30, 2001, with final arguments made on May 22, 2001.
At said hearings, the Court heard oral testimony from Dr. Tabet, Dr. Prebis, Appellant and Appellee.
On June 27, 2001, the trial court found Appellant "guilty of willful contempt" and sentenced her to thirty (30) days in jail, plus court costs in the amount of $250.00.
In its Judgment Entry, the trial court stated:
 "Plaintiff's contempt is in the nature of both civil and criminal contempt in that the court's sentence is given in part as punishment for her willful contempt of the court's companionship orders (w/o justification) as well as given in the nature of forcing her to comply with all court orders in the future in the best interest of this child. The court does take judicial notice of all the pleadings in case number 1995DR01182 in determining the appropriate sentence."
It should be noted that file in this matter contains no less than six motions for contempt in addition to numerous other motions seeking to terminate and/or suspend companionship.
On June 27, 2001, Appellant filed a motion to stay execution of sentence pending appeal.
The trial court granted the motion to stay and suspended any remaining days provided Appellant comply with and submit proof of compliance with the following terms of the suspended sentence:
payment of court costs
payment of appellee's attorney fees of $1,000.00
 submission of a proposal for summer companionship for Appellee to redress the wrong committed by her willful denial of visits from last year
compliance with all court orders.
On July 3, 2001, Appellant file a motion with the trial court for findings of fact and conclusions of law on the June 27, 2001 order.
On August 23, 2001, Appellant moved this court to remand the case back to the trial court to issue findings of fact and conclusions of law.
On September 14, 2001, this Court granted same providing twenty (20) days until expiration of said order.
On November 6, 2001, Appellant filed a Notice of Withdrawal of Motion for Findings of Fact.
On November 9, 2001, this Court vacated its remand order and ordered Appellant's brief to be filed within twenty (20) days of said entry.
ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN FINDING CRIMINAL CONTEMPT BY APPELLANT FOR WILLFUL VIOLATION OF A VISITATION ORDER.
In her sole Assignment of Error, Appellant argues that the trial court's finding of contempt was against the manifest weight of the evidence. We disagree.
A trial court's ruling on a motion in contempt will not be disturbed on appeal absent an abuse of discretion. Pingue v. Pingue (Nov. 6, 1995), Delaware App. No. 95-2006, unreported; Smith v. Smith (Mar. 3, 1997), Stark App. No. 96-CA-0285, unreported. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. We must therefore look at the totality of the circumstances in the case subjudice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably. In re: Brumfield (June 7, 1999), Stark App. No. 1998CA00326, unreported, at 3.
A trial court may properly make a finding of contempt under many different circumstances. Contempt is disregard for judicial authority.State v. Flinn (1982), 7 Ohio App.3d 294. Such disregard may be evidenced by conduct which shows disrespect for the administration of justice, or which otherwise impedes, obstructs, or frustrates the ability of the court to perform its lawful functions. Arthur Young Co. v.Kelly (1990), 68 Ohio App.3d 297. Furthermore, the knowing failure to obey the lawful order of a court may be grounds for a finding of contempt. Id.
Contempt may be either direct or indirect. Direct contempt occurs in the presence of the court, while indirect contempt takes place outside its immediate presence. In the case sub judice, the type of contempt which occurred was indirect contempt.
Indirect contempt may be either civil or criminal.
We must next determine whether the contempt was civil or criminal. In determining whether a contempt charge is civil or criminal, a reviewing court may independently evaluate the circumstances attendant to the finding of contempt without deference to the trial court. In re Purola
(1991), 73 Ohio App.3d 306
Criminal and civil contempt serve different ends within the judicial system, and are governed by different rules.
Civil contempt is designed to benefit the complainant and is remedial in nature. Pugh v. Pugh (1984), 15 Ohio St.3d 136, 137-142. Fines or prison sentences which are conditioned upon the performance or non-performance of an act are often examples of civil contempt. Id. An individual charged with civil contempt must be permitted to appear before the court and purge himself of contempt by demonstrating compliance with the court's order he is charged with violating. Purola, supra.
In the case of criminal contempt, there is no requirement the person charged be permitted to purge herself of the contempt. Brown v. Executive200, Inc., (1980), 64 Ohio St.2d 250. The absence of an opportunity to purge oneself when charged with criminal contempt is appropriate because the purpose of criminal contempt is punitive. Id. Criminal contempt is usually characterized by unconditional fines or prison sentences. Id.
In the instant case, the trial court found Appellant guilty of willful contempt for violating the court's visitation order by denying appellee visitation with his son and sentenced her to 30 days in jail and fined her $250. The purpose of the prison sentence and fine was punitive. At the close of the hearing on February 8, 2001, the trial court expressed its disgust with the parents and what they had been doing to the child in this matter and stated on the record that it was "done messing with this case" (2/8/2001 T. at 18) and that this was "the last straw". (2/8/2001 T. at 20). The contempt was therefore criminal in nature.
The trial court asserted that the finding of contempt with regard to "forcing her to comply with all court orders in the future in the best interest of this child" was civil in nature. The court suspended the sentence and fine on condition that appellant have no further violations of the court's orders. Orders that purport to regulate future conduct do not provide the party with a true opportunity to purge. Tucker vs.Tucker (1983), 10 Ohio App.3d 251, 252. Insofar as such an order purports to regulate future conduct, the order can have no effect because any effort to punish a future violation would require a new notice, hearing, and determination. Id.
Appellant admits that she violated the trial court's visitation order but argues that it was justified. Appellant asserts that she believed that it was not in the best interest of the child to allow him to travel due to his immediate health problems.
Based on the above, we find that the trial court did not abuse its discretion in finding Appellant in contempt as the evidence before the court was sufficient to establish a willful misconduct or a willful disobedience. Appellant not only failed to allow Appellee companionship with his son for the months of November and December, 2000, she violated the court's prior order which required the parties to communicate with each other. Appellee testified that he was never notified that Appellant was not going to allow Joshua to come to West Virginia for the December visit and he went to the K-Mart in Marietta and waited for them to arrive at the scheduled time. (2/8/2001 T. at 4-6). Appellant did advise Appellee in advance that she was refusing to allow his November companionship due to Joshua's trouble with kidney stones.
Appellant's sole Assignment of Error is overruled.
For the reasons stated herein, we hereby affirm the judgment of the Court of Common Pleas, Stark County, Ohio.
By Boggins, J., Gwin, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed. Costs to Appellant.